IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

JOE HAND PROMOTIONS, INC.,        :
                                  :
   Plaintiff,                     :
                                  :
   v.                             :
                                  :
DALIA DILLION-PENDELL and         :     CIVIL ACTION NO.
KLYMAXX LOUNGE & EATERY LLC       :     1:18-cv-3737-AT
D/B/A KLYMAXX LOUNGE,             :
                                  :
   Defendants.                    :

## **ORDER**

This matter is before the Court on Plaintiff Joe Hand Promotions, Inc.'s

("Plaintiff") Application for Default Judgment against Defendants Dalia Dillon-

Pendell and Klymaxx Lounge & Eatery LLC d/b/a Klymaxx Lounge

("Defendants") [Doc. 17].

## I.   DEFAULT JUDGMENT STANDARD

When a party fails to plead or defend against a plaintiff's complaint for

affirmative relief, the clerk must enter the party's default. Fed. R. Civ. P. 55(a). A

default then constitutes admission of all well-pleaded factual allegations

contained in the complaint. *Nishimatsu Const. Co. v. Houston Nat. Bank*, 515

F.2d 1200, 1206 (5th Cir. 1975).[1]   A grant of default judgment in favor of the

---

[1] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all of the decisions of the former Fifth Circuit rendered prior to the close of business on September 30, 1981.

plaintiff is therefore warranted only if there exists "a sufficient basis in the pleadings for the judgment entered." *Frazier v. Absolute Collection Serv., Inc.*, 767 F. Supp. 2d 1354, 1362 (N.D. Ga. 2011) (quoting *Nishimatsu Constr. Co., Ltd.*, 515 F.2d at 1206). In addition to the pleadings, a court considering a motion for default judgment may also rely on evidence such as affidavits and declarations. *Id.*

## II. BACKGROUND

According to the Complaint, Plaintiff is in the business of obtaining permission to distribute broadcasts of sporting events and then entering into agreements with individual venues to publicly exhibit the broadcasts to the venues' patrons. (Compl. ¶¶ 4-5; Affidavit of Joe Hand, Jr. in Support of Plaintiff's Motion for Default Judgment, Doc. 17-2 ¶ 3.) As part of this business, Plaintiff had the exclusive nationwide television distribution rights to the *Floyd Mayweather, Jr. vs. Conor McGregor* Program of August 26, 2017 (the "Program"). (Compl. ¶¶ 5, 6.) Plaintiff entered into sublicensing agreements with various commercial entities throughout North America. (*Id.* ¶ 10-11.) The sublicensing agreements granted these entities limited sublicensing rights — specifically the rights to publicly exhibit the Program to the patrons within their respective establishments. (*Id.*)

Defendants did not contract with Plaintiff to pay the necessary sublicense fee required to obtain the Program for their commercial establishment. (*Id.* ¶ 11.) Nonetheless, an investigator observed the legally unauthorized exhibition of

Plaintiff's Program at the Defendants' commercial establishment, Klymaxx Lounge. (*Id.* ¶ 14; Affidavit of Angela Couch, Doc. 17-2 at 20.) Defendants displayed the Program at Klymaxx Lounge on the night of August 26, 2017, with knowledge that they did not have authorization from the Plaintiff to exhibit the Program. According to Angela Couch, an investigator Plaintiff hired to visit Defendants' establishment the night of the Program, there were between 10 and 15 patrons at Klymaxx Lounge that night. (*See* Couch Aff., Doc. 17-2 at 20.) Plaintiff does not allege whether Defendants intercepted the broadcast via a satellite or cable.[2]

Plaintiff commenced this action against Defendants on August 6, 2018, for violations of Section 605 of the Federal Communications Act of 1934, as amended, as well as violations of Title 47 U.S.C. § 553 for defendants' unlawful display of the Program at Klymaxx Lounge to their patrons. (Compl. ¶¶ 18-21.) Plaintiff also filed for violations of 17 U.S.C. §§ 106 and 501 stemming from Defendants' unauthorized distribution and public performance of the Program. (Compl. ¶¶ 22-25.) On August 14, 2018, Defendant Dillon-Pendell was personally served with the Complaint and summons. (*See* Doc. 6.) Also, on August 14, 2018, Defendant Klymaxx was served with the Complaint and summons via its authorized agent, Defendant Dillon-Pendell. (*See* Doc. 7.)

---

[2] Plaintiff states only that "Defendants, including their agents, servants, and/or employees, took affirmative steps to circumvent the commercial licensing requirement and unlawfully obtained the Program through an unauthorized cable signal, satellite signal, and/or internet stream." (Compl. ¶ 11.)

On October 4, 2018, this Court entered an order explaining that:

In response to the Complaint, Ms. Dillion-Pendell, proceeding pro se, filed a document that has been docketed by the Clerk as both an Answer [Doc. 8] and as a Motion for Extension of Time to Obtain Legal Counsel [Doc. 9]. In this document, Ms. Dillion-Pendell states "I did not willfully engaged [sic] in Count 1 or Count 2 of this civil action filed against me. I am requesting time to seek legal advice and speak with my attorney on the steps to be taken for civil action No.1:18-CV-3737."

(Doc. 13 at 1-2.) The Court reviewed the document Ms. Dillon-Pendell filed, which was docketed as both an Answer and as a Motion for Extension of Time by the Clerk, and explained that this document "is not an Answer as required under Rule 8 of the Federal Rules of Civil Procedure as it does directly not respond in one way or another to the Plaintiff's allegations." (Doc. 13 at 1, n.1.) The Court then ordered that "[b]ecause the document Ms. Dillion-Pendell filed on September 10, 2018 is not sufficient as an answer to the Complaint, the Court hereby ORDERS Defendant Dalia Dillion Pendell to file an answer to Plaintiff's Complaint NO LATER THAN November 19, 2018." (Doc. 13 at 2.) Then, on November 20, 2018, in response to another Motion for Extension of time, the Court granted Defendants a second extension. (Doc. 15 at 2.) In that Order, the Court ordered Klymaxx Lounge & Eatery, LLC to retain counsel who must file a notice of appearance and answer to the Complaint with the Court by December 21, 2018. (*Id.*) The Court also ordered Defendant Dillion-Pendell to file an answer to Plaintiff's Complaint by December 21, 2018. (*Id.*) The Court warned that a failure to do so would result in default judgment against Defendants. (*Id.*)

Neither Defendant has yet filed an answer, and the time for doing so has expired. On February 25, 2019, the Court entered an Order directing Plaintiff to file a properly supported motion for default judgment pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure. (Doc. 16 at 2.) On March 4, 2019, Plaintiff filed a Motion for Default Judgment as to both Defendants. (Doc. 17). Neither Defendant filed a response to the Motion for Default Judgment, and thus the Motion for Default Judgment is deemed unopposed. LR 7.1B, NDGa.

## III.   DISCUSSION

### A.   *Defendants' Liability under 47 U.S.C. § 553 and § 605*

Plaintiff asserts that Defendants are liable for unlawfully receiving or intercepting the Program broadcast under both 47 U.S.C. § 553 and § 605.

Both sections 553 and 605 prohibit the unlawful receipt or interception of certain communications. Section 553(a) prohibits the interception or receipt of any communications service over a cable system without proper authorization. 47 U.S.C. § 553(a). Section 605(a) is similar but applies to radio communications such as satellite television signals.[3]   47 U.S.C. § 605(a); *see DirecTV, Inc. v.*

---

[3] Section 605(a) of provides, in pertinent part:

> no person receiving, assisting in receiving, transmitting, or assisting in transmitting, any interstate or foreign communication by wire or radio shall divulge or publish the . . . contents . . . thereof, except through authorized channels of transmission or reception . . . .   No person not being authorized by the sender shall intercept any radio communication and divulge or publish the . . . contents . . . of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto. No person having received any intercepted radio communication or

*Webb*, 545 F.3d 837, 844 (9th Cir. 2008) ("'[C]ommunications' protected by § 605(a) include satellite television signals.")

While Section 553 clearly covers only cable transmissions, the Eleventh Circuit has yet to weigh in on a circuit split over whether section 605 applies to piracy of a cable service as opposed to *only* radio transmissions. *Compare TKR Cable Co. v. Cable City Corp.*, 267 F.3d 196, 202, 207 (3d Cir. 2001) (holding that § 605 applies only to the unlawful interception of radio transmission) *and United States v. Norris*, 88 F.3d 462, 469 (7th Cir. 1996) (same) *with International Cablevision, Inc. v. Sykes*, 75 F.3d 123 (2d Cir. 1996) (holding that § 605 applies to both radio and cable interceptions). However, this Court has previously addressed this issue and concluded that section 605 does not impose liability for intercepted or unauthorized receipt of cable transmissions. *J & J Sports Prods., Inc. v. Kim, et al.*, No. 1:11-cv-2388-AT (N.D. Ga. Apr. 24, 2012) (Doc. 13).[4]

---

having become acquainted with the contents . . . of such communication (or any part thereof) knowing that such communication was intercepted, shall divulge or publish the . . . contents . . . of such communication (or any part thereof) or use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

47 U.S.C. § 605(a).

[4] The Plaintiff in this case may seek to recover under *either* § 605 or § 553, but not both. *See Joe Hand Promotions, Inc. v. Mujadidi*, No. C-11-5570-EMC, 2012 WL 3537036, at *3 (N.D. Ca. Aug. 14, 2012) ("In general, a plaintiff may not recover under both § 605 and § 553 as it is highly unlikely that a pirate used a satellite dish and a cable box to broadcast a single program simultaneously." (internal citations omitted)); *J & J Sports Prods., Inc. v. Just Fam, LLC*, No. No. 1:09–cv–03072–JOF, 2010 WL 2640078, at *2 (N.D. Ga. June 28, 2010) ("[W]hen a court determines that a defendant's conduct has violated both sections 553 and 605 of the Communications Act, a plaintiff may recover damages under only one of those section." (quoting *KingVision Pay–Per–View Corp., Ltd. v. Wright*, No. 8:06-cv-892-T-30MAP, 2006 U.S. Dist. LEXIS 78404, at *4–5 (M.D. Fla. Oct. 27, 2006)). It appears Plaintiff understands this; in it's proposed order granting default judgment, Plaintiff invited the Court to impose statutory damages for a violation of either § 605 or § 553 but not both. (Doc. 17-3 at 4.)

6

Plaintiff's Amended Complaint does not allege whether Defendants unlawfully intercepted the Program broadcast via satellite (in violation of section 603) or cable (in violation of section 553).[5] Nor does the Court see how one would know the method by which Defendants intercepted the broadcast, absent a behind-the-scenes investigation of Defendants' establishment, which Plaintiff does not allege occurred.

However, it would be a manifest injustice for the Court to deny Plaintiff's Motion for Default Judgment when Defendants willfully violated the law and Defendants' refusal to appear in court precludes Plaintiff from discovering the exact method of the theft. *See Kim*, No. 1:11-cv-2388-AT, slip op. at *8. Here, Plaintiff alleges that it held the exclusive license to broadcast the Program, Defendants intercepted this broadcast without paying Plaintiff, and Defendants showed this Program to their patrons. Additionally, the Court can presume that Defendants' conduct was willful; a cable signal does not descramble spontaneously.

> Based on the limited methods of intercepting closed circuit broadcasting of pay-per-view events and the low probability that a commercial establishment could intercept such a broadcast merely by chance, however, courts have held conduct such as that of [defendant] in this case to be willful and for the purposes of direct or indirect commercial advantage or private financial gain.

---

[5] In its proposed order granting default judgment, Plaintiff acknowledges that Plaintiff's Complaint does not state whether Defendants unlawfully obtained the Program via satellite or cable. (Doc. 17-3 at 4.) In its Complaint, Plaintiff alleges that Defendants "unlawfully obtained the Program through an unauthorized cable signal, satellite signal, and/or internet stream." (Compl. ¶ 11.)

7

*Joe Hand Prods., Inc. v. Leon*, No. 1:06-CV-1180-JOF, 2007 WL 4097412, at *2 (N.D. Ga. Oct. 31, 2007) (addressing willfulness under section 605) (quoting *Entertainment by J & J, Inc. v. Al-Waha Enterprises, Inc.*, 219 F. Supp. 2d 769, 2002 U.S. Dist. LEXIS 16247 (S.D. Tex. 2002)).   Thus, Plaintiff's allegations provide a sufficient basis for holding Defendants liable for the willful violation of either section 605 or 553.   *See J & J Sports Prods., Inc. v. Island Jams Entertainment, Inc. d/b/a Minglez Lounge, et al.*, No. 1:12-cv-1510-SCJ, slip op. at 4 (N.D. Ga. Oct. 1, 2012) (citing *Joe Hand Promotions, Inc. v. ADJ Entity, LLC*, No. 3:11-cv-90-CAR, 2011 WL 4102314, at *2 (M.D. Ga. Sept. 14, 2011)).

Moreover, the main practical difference between these statutes is that section 605 allows for higher statutory damages.  Under section 605, a successful plaintiff may seek between $1,000 and $100,000 in statutory damages, with additional damages up to $100,000 for willful violations for commercial advantage or private financial gain.   47 U.S.C. § 605(e)(3)(c).   Section 553, however, provides for between $250 and $10,000 in statutory damages, and only up to $50,000 for willful violations.   47 U.S.C. § 553(c)(3).   In any case "both statutes provide a discretionary range of possible damage awards that are, in part, overlapping."  *J & J Sports Prods., Inc. v. Tu Mihn Nguyen*, No. 12-cv-2262-LHK, 2012 WL 5412900, at *4 (N.D. Calif. Nov. 6, 2012).   Thus, as the Court below finds that a statutory award in the same amount is equally appropriate under either statute, it is immaterial which one Defendants violated.  *See J & J*

8

*Sports Prods., Inc. v. Island Jams Entertainment, Inc. d/b/a Minglez Lounge, et al.*, No. 1:12-cv-1510-SCJ (N.D. Ga. Oct. 1, 2012).

The Court has complete discretion in determining the amount of statutory damages to award Plaintiff within the statutorily authorized ranges. 47 U.S.C. § 553(c)(3) (observing that court has discretion in determining amount of statutory damages in enumerated range); 47 U.S.C. § 605(e)(3)(c) (same). If Defendants had lawfully obtained access to the Program, Plaintiff would have charged Defendants "over $3,700" for the access because of the size of their venue. (*See* Hand Aff. ¶ 8, Exhibit 1.) Plaintiff submits that it has lost several millions dollars of revenue. (*See id.* ¶ 11.) In addition, the Court takes into account the broadcasting industry's need to deter piracy and interception.

The Court notes that Defendants charged a $20 cover charge on August 26, 2017. (Couch Aff. at 1.) In addition, Plaintiff has provided documentation that there was online advertising promoting the display of the Program. (*See* Hand Aff. ¶ 15, Exhibit 2.) However, there are no allegations that Defendant charged a premium on drinks or food during the Program. Further, the investigator witnessed just ten (10) to fifteen (15) people at the time of the broadcast — meaning Defendants may have collected $300 in cover charges that night. (Couch Aff. at 1.) There is also no evidence that Defendant is a repeat offender.

These facts make the violations at issue less grave than those present in recent similar cases that the Court has ruled on. *Compare J &J Sports Prods., v. P&K Restaurant Enterprise LLC*, No. 16-cv-2904-AT, Doc. 15 (N.D. Ga. Mar. 10,

2017) (awarding $6,500 in statutory damages under Section 605 when Defendants charged a $10 cover and there were ninety (90) patrons present to view the illegal broadcast) *with Joe Hand Prods., v. Leon*, No. 06-cv-1180, 2007 WL 4097412 at *2 (N.D. Ga. Oct. 31, 2007) (awarding $3,000 in statutory damages under Section 605 when only five (5) patrons were present to view the illegal broadcast); *see also J&J Sports Productions, Inc. v. Glitter's Fitness Club Corporation et al.*, No. 15-cv-3189-AT, Doc. 12 (N.D. Ga., Feb. 2, 2016) (awarding $5,500 in statutory damages when defendant charged $10 cover and there were up to 63 patrons present, but establishment was apparently a fitness center that may not have understood its legal obligations); *J&J Sports Productions, Inc v. AG Alliance, Inc.*, No. 15-cv-1525-AT, Doc. 9 (N.D. Ga. Aug. 27, 2015) (awarding $6,500 in statutory damages under Section 605 when only five (5) patrons were present to view the illegal broadcast but when club charged $25 cover charge).

Finally, Plaintiff alleges that Defendant Dillon-Pendell was "was an officer, director, shareholder, member or principal of the entity owning and operating the Establishment." (Compl., ¶ 8.) "[B]y virtue of the above position with the Establishment, Defendant Dalia Dillon-Pendell had the right and ability to supervise and an obvious and direct financial interest in the activities of the Establishment at all times relevant to Plaintiff's claims." (Compl., ¶ 9.) The Court therefore understands that Defendant Dillon-Pendell had management responsibilities over the establishment, and therefore had a somewhat high degree of culpability. (*See* Compl., ¶¶ 8-9.)

10

While the lack of an allegation that Defendants charged a premium on drinks or food mitigates the element of willfulness, the cover charge and online advertising indicate Defendants' willful violation.  Based on these considerations, the Court finds it appropriate to assess from Defendants $2,000 under 47 U.S.C. § 553(c)(3)(A)(ii) and $2,000 for the willfulness of the violation under 47 U.S.C. § 553(c)(3)(B).

### B.     Defendants' Liability under 17 U.S.C. § 106 and § 501

Under the Copyright Act, the owners of copyrights possess the exclusive right to authorize public performances of their works. 17 U.S.C. § 106(4). Plaintiff is the assignee of the copyright to the Program and thus was granted the exclusive right to distribute the Program and also to authorize the public performance of the Program. (Complaint, ¶ 6); 17 U.S.C. §§ 106(3) and 106(4).  Defendants were not given authorization from Plaintiff to display the Program at Klymaxx Lounge on August 26, 2017 and pursuant to 17 U.S.C. § 501, anyone who violates the exclusive rights of copyright owner is an infringer of that copyright. 17 U.S.C. § 501(a). As with Defendant Dillon-Pendell's violations of 47 U.S.C. §§ 553 and 605, her vicarious liability stems from her right and ability to supervise the direct infringer and from her directly profiting from the infringement. *See BUC Int'l Corp. v. Int'l Yacht Council Ltd.*, 489 F.3d 1129, 1138 n. 19 (11th Cir. 2007) (explaining that "[l]iability for vicarious copyright infringement arises when the defendant profits directly from the infringement and has a right and ability to

supervise the direct infringer, even if the defendant initially lacks knowledge of the infringement") (internal quotations omitted).

Under the Copyright Act, a plaintiff may seek to recover an award of statutory damages "in a sum of not less than $750 or more than $30,000" per infringement, instead of an award representing actual damages. 17 U.S.C. § 504(c)(1). Courts have wide discretion in determining statutory damages. 17 U.S.C. § 504(c)(2); *F.W. Woolworth Co. v. Contemporary Arts, Inc.*, 344 U.S. 228, 231-32 (1952). When assessing the proper amount of statutory damages to award, the court may look to: "(1) the expenses saved and profits reaped by the defendant in connection with the infringements; (2) the revenues lost by the plaintiff as a result of the defendant's conduct; and (3) the infringer's state of mind — whether willful, knowing or merely innocent." *Dream Dealers Music v. Parker*, 924 F. Supp. 1146, 1153 (S.D. Ala. 1996) (citing *Major Bob Music v. Stubbs*, 851 F. Supp. 475, 481 (S.D. Ga. 1994); *Nick-O-Val Music Co. v. P.O.S. Radio, Inc.*, 656 F. Supp. 826, 829 (M.D. Fla. 1987)). "Foremost, the court must award an amount that will put the defendant on notice that it costs more to violate the copyright law than to obey it." *Id.* at 1153 (citing *U.S. Songs, Inc. v. Downside Lenox, Inc.*, 771 F. Supp. 1220, 1229 (N.D. Ga. 1991)).

Plaintiff has filed several lawsuits seeking to prevent commercial establishments from broadcasting its programs without authority. *See, e.g., Joe Hand Prods., Inc. v. Leon*, No. 1:06-CV-1180-JOF, 2007 WL 4097412, at *2 (N.D. Ga. Oct. 31, 2007). In most cases this Court is aware of, Plaintiff only brings

unlawful interception claims.  Here, Plaintiff brought both unlawful interception and copyright infringement claims in a double-barreled effort to seek damages based on the identical conduct.  The Court was only able to find one similar case on Westlaw in this Circuit.  *See Zuffa, LLC v. Roldan*, No. 3:14-CV-795-J-32PDB, 2015 WL 12862924, at *8 (M.D. Fla. Aug. 13, 2015) (report and recommendation adopted on September 28, 2015 in Doc. 29).  In *Roldan*, the Plaintiff alleged that there were thirty-five patrons present when the program was aired, there was no cover charge, and the licensing fee was $2,250.  As in this case, the Defendant did not respond, and the Plaintiff sought a default judgment.  Based on these facts, the Court found that the Defendant "willfully infringed and willfully intercepted the program for his own commercial advantage."  *Id.*  The Magistrate Judge recommended that the District Court award $4,500 in statutory damages on Plaintiff's unlawful interception claim and $4,500 (the licensing fee doubled) in statutory damages for the copyright infringement claim, for a total of $9,000.  *Id.*

Plaintiff requests $150,000 in enhanced statutory damages under the Copyright Act.  Plaintiff has provided an affidavit that had Defendants lawfully obtained access to the Program, Plaintiff would have charged Defendants "over $3,700" for access because of the size of their venue.  (*See* Hand Aff. ¶ 8, Exhibit 1.)  Plaintiff submits that "[t]he Program at issue garnered widespread media coverage, public interest, and was reported to be the most anticipated Pay-Per-View event in history making Defendants unauthorized possession of the Program an obvious showing of Defendants' reckless disregard to the Plaintiff's

rights and also a blatant effort by the Defendants to avoid its legal obligations to the Plaintiff." (Doc. 17-2 at 15.)

The Court finds that $4,700 is a more appropriate statutory damage award in this case. An award of this amount reimburses Plaintiff for the licensing fee it would have been paid had Defendants not illegally intercepted the program. This award also exceeds the actual cost of the proper license and thus serves both to punish Defendants' conduct and to discourage future misconduct. This award also takes into account Plaintiff's recovery under 47 U.S.C. § 553 for identical conduct.

## IV.    CONCLUSION

Thus, the Court **GRANTS IN PART** Plaintiff's Motion for Default Judgment, [Doc. 11], and awards statutory damages in the total amount of $8,700 (comprised of $2,000 under 47 U.S.C. § 553(c)(3)(A)(ii), $2,000 for the willfulness of the violation under 47 U.S.C. § 553(c)(3)(B), $4,700 under 17 U.S.C. § 504(c)(1)). The Court further finds that Plaintiff is entitled to an award of its attorney's fees and costs incurred. Plaintiff attached to its Motion an invoice documenting $1,987.50 in attorney's fees and costs. (Doc. 17 at 6-7.) The Court finds this amount reasonable. Accordingly, the Clerk is **DIRECTED** to enter judgment in Plaintiff's favor for $10,687.50. As no further issues are left to litigate, the Clerk is **DIRECTED** to close the case.

14

**IT IS SO ORDERED** this 30th day of April, 2019.

_____
**Amy Totenberg**
**United States District Judge**